**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

EARL BALIS, II,

                     Plaintiff,

v.                                       CIVIL ACTION NO.  2:10-cv-01304

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Earl Balis's Complaint [Docket 2] seeking review of the decision of Defendant, Michael J. Astrue, the Commissioner of Social Security (Docket 10-2 at 14-30).  By Standing Order entered September 2, 2010, and filed in this case on November 17, 2010, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation ("PF&R").   Magistrate Judge Stanley filed a PF&R (Docket 14) on November 22, 2011, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.  Objections to the PF&R in this case were due on December 9, 2011; Plaintiff filed objections on December 8, 2011. (Docket 15.)  On December 20, 2011, Defendant filed a response (Docket 16) to Plaintiff's objections.

*I. FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for supplemental security income on February 19, 2009.  In connection with his applications, Plaintiff alleged disability as of February 1, 2008, resulting from a stroke, hypertension, and an aortic aneurysm.  The

complete factual and procedural history of this case is thoroughly set forth in the PF&R and need not be repeated here. (Docket 14.)

The PF&R rejected Plaintiff's argument that the Commissioner's final decision was not supported by substantial evidence.  Magistrate Judge Stanley recommended that the Court find that the ALJ properly evaluated Plaintiff's claim, applied appropriate and governing legal authority when evaluating Plaintiff's treating and consulting physicians' opinions, and affirm the final decision of the Commissioner. (Docket 14 at 34, 38.)

## II.  LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 72(b), the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

The Court's review in this case is limited to determining whether the contested factual findings of the Commissioner—as set forth in the decision of his designee, United States Administrative Law Judge James P. Toschi—are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  The Social Security Act states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §

405(g).   The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).   Substantial evidence "consists of more than a mere scintilla of evidence but may somewhat less than a preponderance.*"* *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, make determinations as to credibility, or substitute its own judgment for that of the Commissioner.   *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).   Rather, the Court must adopt the Commissioner's findings if there is evidence in support of such findings "to justify a refusal to direct a verdict were the case before a jury."   *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972).   "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."   *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); *see also Hays*, 907 F.2d at 1456.   Thus, even if the Court would have reached a different decision, it must nonetheless defer to the conclusions of the ALJ if her conclusions are bolstered by substantial evidence and were reached through a correct application of relevant law.   *See Coffman*, 829 F.2d at 517.

### III.  DISCUSSION

In his objection to the PF&R, Plaintiff faults the PF&R in two respects.   First, Plaintiff states that the ALJ's finding concerning Plaintiff's residual functional capacity is not supported by substantial evidence.   Plaintiff argues that the ALJ improperly afforded significant weight to the opinions of Dr. Robert Marshall—one of two non-examining physicians—because the ALJ did not

adopt one of Dr. Marshall's opinions.  More specifically, Plaintiff appears to argue that, because the ALJ concluded that Plaintiff had a "thoracic aortic aneurysm" and because that finding was at odds with Dr. Marshall's testimony that it was "absolute nonsense" to believe such a thing (Docket 15 at 2), the ALJ should not have given any weight (or as much weight as he did) to Dr. Marshall's opinion concerning Plaintiff's physical limitations.  Plaintiff appears to claim that, as a consequence of the ALJ's rejection of Dr. Marshall's opinion regarding the existence of an aortic aneurism, the ALJ should have credited the opinion of Dr. Kalapala Rao, his treating physician.  Dr. Rao, who did not testify, opined in his report that Plaintiff could only occasionally (defined as less than one third of the working day) lift less than ten pounds. (Docket 10-11 at 37.)   If the ALJ had credited Dr. Rao's opinion, Plaintiff claims that the ALJ would have had to have found that no jobs would be available for Plaintiff with this degree of limitation. (Docket 15 at 2.)  Plaintiff complains that Magistrate Judge Stanley failed to adequately address these matters in her PF&R.  Second, Plaintiff claims that the ALJ's reliance on the opinion of the second non-examining physician, Dr. David Blair, a neuropsychiatrist, rather than the opinion of Janice Blake, an examining psychologist, was also erroneous.  Plaintiff claims that Magistrate Judge Stanley's concurrence with the ALJ's decision to credit Dr. Blair's testimony was faulty in that Magistrate Judge Stanley improperly found that the report of a psychologist, John Atkinson, tended to corroborate Dr. Blair's findings and not those of Ms. Blake.

With respect to Plaintiff's first contention, Magistrate Judge Stanley correctly determined that the ALJ's finding that Plaintiff's residual functional capacity was supported by substantial evidence.  Plaintiff complains that Magistrate Judge Stanley "did not deal with" the fact that the ALJ afforded Dr. Marshall's opinions significant weight even though Dr. Marshall opined—contrary to the ALJ's

finding—that there was "no evidence of an aortic aneurysm." (Docket 10-2 at 27.) The record shows that the ALJ based his finding that Plaintiff had a "thoracic aortic aneurysm" on a June 2008 imaging study that stated that diagnosis. (Docket 10-2 at 17, 10-10 at 18.) The ALJ found that the aortic aneurism was a "severe impairment." (Docket 10-2 at 17.) The record also shows that Dr. Marshall, a non-examining medical source, testified as follows at the administrative hearing:

> Now, I would like to remove his anxieties about aortic aneurism because he does not have an aortic aneurism. They did find that there was mild thalbitation [phonetic spelling] or enlargement [inaudible] and this is an absolutely a uniform finding in people with severe hypertension. It was not an aneurism. Further, he had a CT angiogram of the chest which showed evidence of calcification in the aorta, the coronary arteries, which indicates [inaudible] sclerosis, which is a frequent complication of hypertension. But the CT angiogram did not show any aneurism. So he ought to disabuse himself of the fact about the aneurism because he does not have that nor will he develop one.

(Docket 10-2 at 50.) Later, Dr. Marshall, in direct response to Plaintiff's testimony that he had an aortic aneurism, opined that an aneurism diagnosis was "absolute nonsense." (Docket 10-2 at 60.)

Magistrate Judge Stanley rejected Plaintiff's argument that the ALJ did not address the inconsistency between Dr. Marshall's testimony and the ALJ's finding. She reasoned that the ALJ necessarily addressed the inconsistency because the ALJ made a finding that Plaintiff had a thoracic aortic aneurism and that this medical condition qualified as a severe impairment. (Docket 14 at 36.) It is clear from the record that the ALJ, in making this finding, gave greater weight to a diagnostic test over the opinion of a non-examining medical source. To state the obvious, this was a finding to Plaintiff's benefit. To the extent that Plaintiff argues that the ALJ, thus, was compelled to reject the remaining portions of Dr. Marshall's testimony—and he offers no authority for that position—the Court rejects that view. The ALJ's decision to credit the diagnosis indicated on the CT scan speaks more to the ALJ giving Plaintiff the benefit of conflicting evidence and less of Dr. Marshall's

credibility, particularly considering that Dr. Blair characterized the aneurism as merely "mild." Importantly, it is not this Court's task in reviewing the record for substantial evidence, to re-weigh conflicting evidence, make determinations as to credibility, or substitute its own judgment for that of the Commissioner. *See Hays*, 907 F.2d at 1456.  (Docket 10-2 at 38.)  Moreover, Dr. Marshall's opinion regarding Plaintiff's physical limitations and the amount of weight Plaintiff could lift was consistent with that of Dr. Stephen Nutter, whose opinion, in turn, the ALJ stated was "entitled to significant weight as it is supported by the entire evidence of record." (Docket 10-2 at 26.)  Dr. Marshall's physical limitations opinion was further corroborated by other evidence. (*See, e.g.*, Docket 10-10 at 65.)  Plaintiff did not object to the PF&R's findings about Dr. Nutter.  The ALJ's decision to resolve this conflict in the evidence in this manner was entirely sound and gave the benefit of the doubt to Plaintiff.  Finally, it is notable that the ALJ, in making his finding that Plaintiff was able to perform light work, placed several explicit limitations on what Plaintiff can and cannot do. (Docket 10-2 at 22.)  These limitations are consonant with some of the concerns raised by Dr. Rao and Ms. Blake.

As for Plaintiff's argument that the opinions of the non-examining neuropsychiatrist, Dr. David Blair, were not supported by substantial evidence, the Court also rejects this contention. Magistrate Judge Stanley correctly found that the ALJ's decision to give Dr. Blair's opinions significant weight—and give those of Dr. Kalapala Rao (a treating physician) and Ms. Janice Blake (an examining source) "little weight"—was well-supported by the record.  Pursuant to 20 C.F.R. § 404.1527(d)(2), a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  If the treating physician's opinions

are not given controlling weight, then the opinions are evaluated using the considerations set forth in 20 C.F.R. §§ 404.1527(d)(2)-(6) (*e.g.*, the length and nature of the treating relationship, supportability and consistency of the opinions, specialization of the treating physician.)   The ALJ did not give Dr. Rao's opinions controlling weight, but rather afforded them "little weight" because they were "not supported by the evidence of record, including [Plaintiff's] own report of daily activities." (Docket 10-2 at 26.)  As correctly noted by Magistrate Judge Stanley, Dr. Rao's opinion regarding Plaintiff's functional limitations was not supported by Dr. Rao's own March 30, 2009, evaluation of Plaintiff.   There, Dr. Rao found that Plaintiff was "[f]unctionally independent in all activities of daily living" and had normal range of motion except for his left upper extremity where his strength was slightly diminished (four fifths' capacity). Magistrate Judge Stanley further noted that Dr. Rao's opinions were also contradicted on multiple occasions by other treating sources. (Docket 14 at 34-35.)

Plaintiff also claims that Magistrate Judge Stanley incorrectly found that the report of John Atkinson, a licensed psychologist, which was submitted in connection with Plaintiff's request for review of the ALJ's decision, tended to corroborate Dr. Blair's opinions and not Ms. Blake's.  To the extent Plaintiff invites the Court to re-weigh conflicting evidence, the Court declines that request.

Plaintiff appears to also argue that the Commissioner should have reversed the ALJ's decision based on Mr. Atkinson's opinions. The Court disagrees.  Mr. Atkinson indicated that Plaintiff was the source of information for the evaluation, along with some psychological and medical records. (Docket 10-11 at 41, 43-44.)  In light of the ALJ's negative credibility assessment of Plaintiff, the fact that Plaintiff was the source of much of Mr. Atkinson's information is a reason to view his evaluation with caution.  Along this vein, the Court notes that Mr. Atkinson's report

states that Plaintiff denied "any interpersonal problems" at his work and that "he has never left a job because of emotional or behavioral factors." (Docket 10-11 at 45.)  That statement is at least partially contradicted by Plaintiff's testimony before the ALJ where he stated that he was fired from his most recent job because "[a] girl was telling the boss rumors and got me fired." (Docket 10-2 at 58.) Moreover, Mr. Atkinson did not appear to have at his disposal all of the records that were used in connection with the administrative proceeding.  Mr. Atkinson's report identifies the documents he reviewed: a psychological evaluation by Paul Dunn, Ph. D.; Ms. Blake's evaluation; school records; a physical examination performed by Tri-State Occupational Medicine (Dr. Nutter's practice); handwritten notes dated August 18, 2009, by Dr. Rao, which Mr. Atkinson said "mention[ed] stroke, hypertension and something else I can't make out"; handwritten notes dated February 1, 2008, from Charleston Area Medical Center ("CAMC"), and other records, presumably from CAMC, reflecting diagnoses of hypertension, aortic aneurism, stroke, among others.  Comparing the wealth of documentary evidence that was part of the administrative record with the records relied upon by Mr. Atkinson, it appears Mr. Atkinson did not have the benefit of the full medical record on which the ALJ based his decision. For these reasons, Mr. Atkinson's evaluation, standing alone or in conjunction with the other evidence in the record, is not sufficient evidence to disturb the Commissioner's final decision.

The Court, likewise, rejects Plaintiff's claim that the ALJ erred by giving Ms. Blake's opinions little weight. That determination was made because Ms. Blake's opinions were largely based on Plaintiff's subjective allegations. As noted by Magistrate Judge Stanley, a conclusory opinion based solely on a claimant's subjective reports is not acceptable evidence to prove an impairment. 20 C.F.R. § § 404.1508, 404.1528.   Moreover, the ALJ found that Plaintiff was not

fully credible, a determination which will not be second-guessed here. The ALJ also noted that Ms. Blake's opinions conflicted with Plaintiff's own report of daily activities. (Docket 10-2 at 27.)

Given this record, the ALJ's finding that Plaintiff's residual functional capacity to perform light work with the limitations stated in the ALJ's Decision (Docket 10-2 at 22-28), and the Commissioner's final decision were supported by substantial evidence.

*IV. CONCLUSION*

For the reasons set forth above, the Court **ADOPTS** the PF&R to the extent consistent with this opinion, **OVERRULES** Plaintiff's Objection to the PF&R [Docket 15], **DISMISSES** Plaintiff's Complaint [Docket 2], and **REMOVES** this case from the Court's docket. A separate judgment order will enter this day.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 30,  2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

9